The first case on the call of the docket is agenda number five, case number 131360, People v. Carroll. The attorney for the appellant is appearing via Zoom. Mr. Richards, are you prepared to proceed? Chief Justice Neville, I am, for the reasons I just turned on my audio. Please proceed. Your Honors, as you know, this is the appeal from the denial of Roger Carroll's post-conviction petition at the second stage in both the trial court and then affirmed by the appellate court. I'd like to begin just by telling you, if I may, a little anecdote, and then going on to make some general statements about these kinds of claims, why this case is important, and how I think it may be fairly easily resolved. When I first got word that the petition believed to appeal had been granted, I posted this on my local Cook County Public Defender criminal defense attorney listserv, and said I had it granted. And the response was, oh, what was that? What was the issue? And my response was, this issue, if I explain it to you, you might fall asleep because it's so technical and abstruse. And I told them the issue, and some of the attorneys said, yeah, that puts me to sleep. That's really a technical issue. But I think it's an important issue because of this. Claims of ineffective assistance of counsel are obviously disfavored in the courts. It looks like sour grapes and kind of a last shot. And even more so, claims of lack of reasonable assistance of post-conviction counsel. I mean, that's really the last shot, saying that you had bad trial counsel or appellate counsel, and your post-conviction counsel didn't do a good job either. Nevertheless, these claims are sometimes the only means by which innocent people can get redressed. And I think they're important and have to be taken seriously. Now, the issue here is that we have retained counsel. He has retained counsel for the post-trial motion, actually. Retained counsel for direct appeal. Retained counsel for the post-conviction petition. And there was never any pro se filing. So the question here is, how do we evaluate this attorney's performance? Because this is what he did. Two of the claims were, in our view, well supported. There was a claim of lack of Miranda warnings, supported by an affidavit from the petitioner. There was a claim of failure to investigate the Bones evidence, supported by a report of an expert. But then there were also a number of other claims that were not supported at all. There's a claim, for example, that they should have gotten a fingerprint expert. But there's no attachment of a report from a fingerprint expert. There is a claim that there had been evidence in the papers bearing on the case, but no affidavit from the reporter. There is a claim that the defendant had been told that if he changed venue, he would lose the particular judge. Not true. By the way, not true in my experience. Usually when there's a change of venue, the judge moves with the case to a different county to pick the jury. No support for that one either. So what happened from there is fairly complicated. The trial court said two of your claims are preserved, but we're rejecting them. And as the remaining claims, they should have been raised on a direct appeal, and we're rejecting them. And then the appellate court said everything should have been raised on direct appeal and rejected them. Now, that obviously raised the issue. If you have a retained counsel, how was – is he not under a conflict of interest if he's just been told by the courts that he should have raised all these claims on direct appeal, and the only way of raising the issue was by claiming his own effectiveness? Now, the state has kind of neatly sidestepped that issue by agreeing with us now, although they didn't agree in the trial court or the appellate court, that none of the claims would, that there was no problem, all the claims were preserved, and there was no conflict. We don't agree that they can change positions like that. But apart from that, I think the more general issue your honors have to address is this. Since this was retained counsel – sorry? That was just me clearing my throat. Please continue. I was waiting for a profound comment, and I'm sure I'll get one, but I understand. So in terms of – since it was retained counsel, there's no 651C certificate was filed. So we have no idea as to why retained counsel chose to raise these issues, which were his issues, not something that was raised pro se, but then attached nothing, zero, to support those other issues. And there's also some defects in the way he argued this, and this was argued in the appellate court. Some of these criticisms, I think, are more justified than others. But in general, there seems to be a problem with what retained counsel did. Now, this then goes on to what I think your honors really should do, and I think this is the easiest way to resolve the case. Your honors, since you're not the appellate court, you're the Illinois Supreme Court, you have power over the rules. You write the rules. You can change the rules. You can change the rules in the context of the case. The current 651C rule, by its terms, appears to apply, first of all, in the instance where there's a pro se defendant or petitioner who has appointed counsel. An appointed counsel has specific duties to look at the petition and file a certificate saying, I've discussed the petition, I've reviewed the claims with the defendant, and I've amended it where necessary. Now, I think in terms of practical experience where this usually comes up and why this is important is, for example, when I get a claim that has been a pro se claim, often a pro se claim will have 50 or 60 claims easily, sometimes more. And you have to go through, and the rule tells you if you're in this position where there's been an initial pro se filing, whether you're appointing counsel or retained counsel, you have to review all these and you have to make the necessary attachments or changes. Now, whether you leave frivolous claims in the petition or not, I guess it's a matter of counsel strategy or thought or whatever. But there is a requirement that once you look at these claims, you have to support them if they can be supported. Now, in people versus Cotto, your honors rule, which I think is a good ruling that this 651 C applies not only to appointed counsel, but retained counsel who comes on the case after the pro se petition has been filed, because after all, retained counsel should be doing the same thing. We want to be sure that pro se petitioners claims have been reviewed. But I think your honor should amend the rule now to say it applies generally, even a retained counsel files a petition, because here we have an instance where retained counsel filed a petition, didn't support the claims. And we have no idea as things stand whether they're good claims or not.   I don't know if I've said this before, but I think it's important to understand the nuance of what you say. Could I stop you there? Maybe I'll stop you there. You say we have no idea if there are claims, meritorious claims here. That seems to be kind of the heart of this case. What does an attorney have to do? In other words, at this point, it sounds all pretty speculative. You haven't really directed us to a specific where had counsel rewritten the petition, added more documentation, that it would have any meaning. We don't know. We just don't know. Well, is that enough to say that there was an actual conflict of interest or that counsel's performance did not meet the standard if we don't know? Your answer, I think the answer to the question is I think is obvious, or at least obvious to me, maybe not to the court. I think since if requiring an outcome-centric test in this case, some modification of Strickland to say that in this instance you have to show the claims would have been good, even though you don't have the supporting documentation, is, as I said in my brief, this is a catch-22. Because look at my position. I wasn't counsel at the trial court. I wasn't counsel in the appellate court either. But even counsel in the appellate court had no means to attach anything to their brief to demonstrate a difference in the outcome, because they're limited to what's in the record. There's no fingerprint expert in the record. There's no affidavit from the reporter for the local newspaper. There's no support for these other claims whatsoever. So I think the virtue of Rule 6051C is that if counsel files it, it's some assurance that he's looked at the claims and they are supported the best they can be. Now, that, of course, also raises the question of since this was not a pro se petition, and since these were counsel's claims that he made, why in the world didn't he support them? So I think one can view this in two different ways. One, you can view this as a per se failure of counsel, where petitioner has gotten really no assistance on these claims because nothing has been done that needs to be done. So I think at a minimum, this should be remanded for new second-stage proceedings, where if I am the counsel, and I will be, I will amend these appropriately or drop them and proceed with what is reasonable to proceed with. So your Honor identifies, in other words, I think your Honors cannot find that these unsupported claims can go on to the third stage. That would be ridiculous, because they're unsupported. But you can find that petitioner should get a chance with unconflicted counsel to amend the petition where necessary, and that counsel on remand should be required to file a 651C. And I think that's reasonable. Let me ask you about one of the claims that you raised in your brief, and that is that trial counsel was ineffective, and then appellate counsel was ineffective for not raising this, for not filing a motion to suppress the defendant's statement, correct? You referred to that, that there was a lack of Miranda warnings, correct? Yes, correct. And unless there's another question, I can respond to that. Well, the question I have for you is this. Am I correct that the testimony that you are arguing should have been suppressed was the police testimony that when the defendant was arrested, he denied all the claims? He denied that he committed the murder, correct? And you're arguing that it was ineffective for counsel to try to suppress that? Yes, and this is the reason. The key to the statement was this, and this is a complex set of facts, and it's the sort of case that's gotten publicity because it's a complicated, cold case. But one of the most important pieces of evidence was this, that on the car of the missing victim were allegedly the fingerprints of the defendant. And one of the things he said in the statement, which was fatal to his case and fatal to his defense, was, I never touched the car. So if you never touched the car, why are your fingerprints on the car? So all the other things he said in that interview about I'm innocent and so on and so forth went to the wayside, in our view, because that statement came in. Could it be that the appellate counsel, post-conviction counsel, saw that as trial strategy, that trial counsel, rather than calling his client to the stand to deny that he committed the murder, allowed the police officer to testify that he denied committing the murder? You're saying that the fact that they didn't file a motion to suppress here was so glaring that this is ineffective assistance or unreasonable assistance or maybe per se conflict for not raising that issue, right? Well, let me say this. First of all, I don't believe that this issue could have been raised on direct appeal, even though the state said that below, because it depended upon Roger Carroll's affidavit that he wasn't given Miranda warnings. If you don't know whether he's giving Miranda warnings in the car, because he was interviewed in the car first, you don't know if you have a claim. Second is that if the statement had been suppressed, then the defendant, Roger Carroll, would have been protected by the presumption of innocence. If he had chosen to testify, the statement would have come in to impeach. But I don't think it's a reasonable strategy not to move to suppress a key piece of evidence in the case, the statement, with the admission of touching the car. And that can be held to be a harmless error. Statements admitted— Counsel, I have a question. You're focusing on the touching of the car, but the substance of most of his statements was exculpatory. So why wouldn't that be considered a trial strategy, as Justice Tice just asked you? Wouldn't it be trial strategy for his defense attorney to allow the statements that he did not commit the murder to come in through the testimony of someone else, other than putting the defendant on the stand? Explain to me why that isn't trial strategy, as opposed to focusing just on the touching of the door. He gave an entire statement, and the entire thing was exculpatory. Why wasn't that—why would you say that that wasn't trial strategy to not move to suppress it? Well, as I said, two reasons. One, had it been moved to suppress, you could always have—and it was suppressed, then you would have the option of whether to adopt that trial strategy or not. The second thing is, I said it was mostly exculpatory, except for the touching of the car, which was fatal. Because if he's saying he didn't touch the car, that he's lying about that, then he's lying about having contact with the victim. So, Counsel, you're suggesting that based on pulling out one sentence or one part of an otherwise exculpatory body of testimony, that it was ineffective for Counsel to not move to suppress all of that. Is that what you're saying? Yes. Okay. Yes, I am. And the other thing I would say about this is that in terms of trial strategy, the easiest way to determine that is to have Counsel testify at the third stage that this is my strategy. Now, there's an interesting little twist here, because the post-conviction Counsel, the one who raised this issue, was also post-trial Counsel. So, again, there's a little bit of a conflict, because presumably as post-trial Counsel, he would have known whether this was trial strategy or not, and therefore is a potential witness. So that would be another reason why he should not have been representing Roger Carroll after having done the post-trial motion and the direct appeal. Your Honors, I believe if there's no further questions, I've said all I have to say. I would also emphasize that regardless of your ‑‑ if you agree with me on the Miranda claim, the case goes on to the third stage. But if you disagree with me, I think that given the remaining issues and the lack of a 651C, the case should be remanded. Thank you, Mr. Richards. Ms. Snyder, are you ready to proceed? Good morning, Your Honors, Counsel, and may it please the Court. I'm Assistant Attorney General Lauren Snyder, representing the people of the State of Illinois. The Circuit Court here correctly dismissed Petitioner's post-conviction petition in second stage proceedings, and the appellate court correctly determined that post-conviction counsel provided reasonable assistance in the first and second stage of those proceedings. And I'd like to focus, as most of your Honors have and my friend here has, on the issue of reasonable assistance of post-conviction counsel, because that is, I think, the meat of why we're here. And I'll point out, as became clear through briefing and as my opponent here acknowledges, it appears that we do agree that the claims that were presented in the post-conviction petition were not forfeited, because they did rely on evidence outside of the record, and that post-conviction counsel did support with affidavits and with additional evidence as to those claims. Now, as to whether they were supported sufficiently in order to pass to the third stage is a different question, because they could not have been. They simply weren't going to progress to that stage. But focusing on the issue of reasonable assistance, the question here is relatively simple, now that we've resolved that there was no need for post-conviction counsel to allege his own ineffectiveness on direct appeal in order to avoid forfeiture. There was no need to avoid forfeiture because the claims were not forfeited. So now that we've agreed on that, the question is simply, did post-conviction counsel provide reasonable assistance? And I also agree with my friend that to answer that question, we need to define what is the standard by which we determine post-conviction counsel has provided reasonable assistance, or rather, what does petitioner have to show in order to succeed on a claim of unreasonable assistance of post-conviction counsel? And consistent with this court's case law, whether a counsel is retained or appointed, that standard is the same. Reasonable assistance is due regardless. Reasonable assistance is due at all stages. And we would posit that the court should specifically clarify also, very consistently with its case law, that petitioner must show that counsel both performed deficiently in those proceedings, and that deficiency caused a petitioner to lose an otherwise meritorious claim. In other words, if counsel had not performed deficiently, would petitioner's claim have survived at least to the next stage of post-conviction proceedings? And the appellate court has described this as a Strickland-like standard, and we agree it is like Strickland. But Strickland, of course, applies to counsel providing assistance in trial and on direct appeal, where there's a constitutional right to assistance of effective counsel. Here, by contrast, in post-conviction proceedings, there's no constitutional right to counsel. Accordingly, counsel, the burden on petitioner is more because the burden on counsel is less at this stage of the proceedings. The PC context requires less of counsel than trial or direct appeal, so petitioner's burden must be higher to show unreasonable assistance in order to obtain remand for further post-conviction proceedings. This is very consistent with what this court has described in People v. Johnson in 2018, that the purpose of the Post-Conviction Hearing Act is to ensure that criminal defendants are not deprived of their liberty in violation of their constitutional rights. And to fulfill that purpose, there must be some standard of reviewing attorney performance. Otherwise, quote, meritorious post-conviction claims may be lost. So the point of the act and to evaluate post-conviction counsel is to ensure that meritorious claims are not lost. Counsel, what do you think about opposing counsel's position that Rule 651C should be modified by this court? 651C should not be modified to apply to retained counsel who enter in the first stage and craft the petition. So as this court explained in Cotto, 651C is a vehicle for ensuring that appointed counsel, who enters after there's already been a pro se petition, to ensure that the appointed counsel at that point provides reasonable assistance. And that's because a pro se petition has already started the process and at least alleged the gist of a constitutional claim, and that's why it has survived to the second stage to get appointed counsel. But Rule 651C requires appointed counsel to then consult with petitioner to determine what is the substance of the claims that petitioner wants to raise, and then to review the entire record and ensure that there is support for those claims, or that post-conviction counsel can then go out and get support for those claims through affidavits or other types of evidence. So 651C ensures essentially that an appointed attorney who the court has decided must represent this petitioner, to ensure that that attorney has fulfilled the minimum level of due diligence in ascertaining what those claims are. Now, a retained counsel who crafts the post-conviction petition from the beginning is in a different posture. So it's already part of counsel's obligation, just inherent in that representation to determine what the claims are. But much like as a trial or direct appeal, it is counsel who determines what is the strategy. Counsel also, of course, in order to fulfill his ethical duties as an attorney, is going to review the record and determine what claims to raise and how to support them. So 651C really exists to ensure that the pro se petitioner has some level of communication with counsel in order to advance the claims that survived to the first stage dismissal, or perhaps to raise new claims that the petitioner, of course, being pro se, didn't know to raise because that person is not a lawyer. It just does not make sense to apply the checklist that 651C to consult with petitioner to ascertain the claims that petitioner wants to raise. It doesn't make sense to apply that and require post-conviction counsel to certify when that counsel has been retained, when petitioner has decided, this is the person I want to represent me. That person does not need to then certify to the court that counsel has done due diligence. That should come through just in the petition. As far as it is possible to allege claims, whether they might be, they still might have some problems, however, with support just by the nature of at this stage, it is difficult, rightfully so, to advance past post-conviction proceedings because we're already past direct appeal at this point. So the burden to show both that something went wrong at trial is higher, as well as the burden to show that my post-conviction counsel performed unreasonably is necessarily higher at this stage, at which the presumption of innocent beyond until proven guilty beyond a reasonable doubt no longer applies. This court has explained also in Williams just last year that perhaps there will not always be sufficient support for every claim that post-conviction counsel who is retained at the first stage wants to make. That doesn't mean that counsel shouldn't necessarily try to make those claims and support those claims to the extent that he or she can, but it does mean those claims do not need to be automatically remanded simply because on appeal, another counsel comes in and said, well, this attorney should have alleged this differently, should have supported this differently, should have had a different strategy. That is nothing but a formula for infinite remands back to the lower court for continuing to amend and amend and amend claims that are never going to go anywhere. In Williams, this court determined that counsel who was retained at the first stage, that counsel provided reasonable assistance where he made the only argument available in a petition that simply didn't have any meritorious claims in the end and petitioner failed to prove otherwise. So this court has already determined that in a very similar posture, there's no need to amend Rule 651C to apply to retain counsel. Rather, the overall standard of reasonable assistance applies to retain counsel equally in the first stage as it applies to all post-conviction counsel across all stages of post-conviction proceedings. Likewise, in Hough, this court determined that petitioner had failed to identify anything counsel could have done to allow the petition to survive dismissal. In Cotto, this court determined that petitioner also failed to show what counsel could have done to defend against dismissal. There's a long line of cases explaining that when a post-conviction petitioner cannot show that his counsel could have saved his claims and survived to the next stage, that is not a formula for remand to see if another counsel can. That means that the claims should end because they simply are not meritorious, and such is the case here. And I'll briefly address the issues of the claims that counsel has put forth here. And I'll note first that the issue of whether claims about interviewing eyewitnesses or the absence of a strategy around DNA evidence or the change of venue or the fingerprint expert, the extra source, all the claims involving those alleged deficiencies of trial counsel, whether those were adequately presented or supported has not been argued at any stage of these proceedings. So that issue that counsel has just raised here has been forfeited many times over, as have been the issue of whether any of those claims had merit. He did not argue that they had merit in the appellate court, and he failed to argue or offer any support here before this court that those claims had merit. Now, for the other couple of claims that now he alleges were well-supported and perhaps something could be done with them, he still has yet to point out to this court what can be done to save the claim that trial counsel was ineffective for failing to suppress what Your Honors identified as a nearly entirely exculpatory statement, denying all involvement in this murder. Likewise, both in the appellate court and here, Petitioner has failed to identify anything to overcome the presumption that allowing the evidence of the bone testing without any radiocarbon testing, why that overcomes any presumption of reasonable trial strategy, and why even if that testing had been done, why that would have changed the outcome. Because just in the background of all of this is the fact that the strongest piece of evidence in this entire case was the extremely detailed testimony of Nathan Carroll, the defendant's son, who observed the acts of the day in which Bonnie Woodward went missing and explained exactly what happened from start to finish, as well as the additional evidence that none of these claims disturb that corroborates that testimony. Eyewitnesses who saw somebody close to the Petitioner's description speaking to the victim in the parking lot. The fact of the fingerprints on the truck, it was trial counsel's strategy to try and undermine confidence in that fingerprint matching, but because he lost a motion to suppress in the trial court, that evidence was going to come in. The damning evidence, as my friend explained, was going to come in regardless of any statements about those fingerprints or whether Petitioner denied ever touching the truck. That was going to be shown regardless. In addition, there were many other smaller pieces of evidence, the bullet casings, the evidence of the fire damaging the tree at the exact same time, the testimony of Petitioner's wife. All of it corroborated the main piece of evidence, which was Nathan Carroll's testimony explaining exactly what happened on that day. So this court should affirm the circuit court's judgment dismissing the post-conviction petition at the second stage and affirm also the appellate court's judgment determining that post-conviction counsel provided reasonable assistance. If there are no further questions. Thank you, Ms. Snyder. Thank you. Mr. Richards, some brief rebuttal? Yes, very brief, Your Honor. First of all, as to the 651C issue, I would note that the Johnson case, which I cited, was not overruled by Williams. In fact, the court did not discuss it. And I think the Johnson case is a good example of a case where there was lack of reasonable assistance because it was clear that counsel didn't read the record and didn't support anything and didn't do anything. And I think that case is closer to this one. Now, in terms of whether 651C should apply to retained counsel, this court in Cotto has already held that it does apply to retained counsel so long as there was a pro se petition originally. And all of counsel's arguments against amending Rule 651C would fail given Cotto because the same considerations would apply. You would say that the pro se petitioner has chosen to retain counsel. Counsel has done whatever retained counsel wants to do. And there's no reason to scrutinize counsel performance or make counsel file a document saying he's read the record, reviewed all claims, and looked at everything. I would also say just anecdotally that many of the judges I deal with, including Judge Joyce in Cook County, are now on cases where I am retained, they're requiring me to file a 651C, which I do happily, because I think it is a guarantee to the court and my sworn word that I've looked at everything and I've done everything I need to do. I think it is useful, important, and not a great change, and not something that causes any difficulty to hold that Rule 651C applies to retained counsel, as it should here. With respect to the fingerprint issue, I mean, the fact is that the eyewitnesses had originally not identified Roger Carroll. That came later, and the identifications were quite suspect on a number of grounds, among other things, the fact that the witnesses had been shown photographs before they testified. But in addition, the fingerprint evidence might have come in, although it also might have been challenged, which it wasn't, but the fingerprint evidence would only establish that Roger Carroll had contact with a car, which was in an open parking lot. Anyone could have had contact with it. Had his statement been suppressed, the case could have been defended on the grounds that there was alternate explanations for the fingerprints. Once his statement came in and he said he never touched the car, there was no alternate explanation. He appeared to be a liar in the eyes of the jury, and he was convicted. And that should have happened. Can I ask a question? Do any of these arguments that you're saying should have been pursued, do any of them attack, engage, undermine the eyewitness testimony of the defendant's son, who testified at length as to what he saw in terms of the murder and the disposal of the body? Do any of these claims attack his testimony, which certainly seemed to be the key evidence in the case? No, they don't. But you have to remember that his testimony was immunized. In other words, he could say anything he wanted to without being charged. So given the fact that Roger Carroll had no motive or at least none who could think of it. That's all questions of credibility. But you're not suggesting there are any constitutional, any errors in terms of the testimony of that witness or, you know, the failure on the part of counsel to object to anything in terms of that? None of the arguments that you're raising here in a post-conviction petition attack, undermine the introduction of all of that testimony, which was, as everyone agrees, the most significant part of the State's case. You're not challenging those? There's no constitutional issue with respect to his testimony. But the weight of the evidence obviously goes to reasonable probability of a different outcome. And the fact that it was an immunized witness, admittedly an accomplice, testimony to be viewed with caution and suspicion, and that he had a motive for the murder and Roger Carroll did not, all reflect on the weight of the evidence and whether there's a reasonable probability of a different outcome given the other evidence. And I hope that answers the question, or at least it answers it the best I can. And if there are no further questions, I would again urge this court to reverse at least for a new second stage proceedings, if not for third stage proceedings. Thank you, Mr. Richards. Case number 131360, People v. Carroll, is taken under advisement as agenda number five. The court thanks the attorneys for their arguments.